IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **TRUSTEES of the CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, and CHICAGO REGIONAL COUNCIL OF CARPENTERS APPRENTICE & TRAINEE PROGRAM FUND,**<br><br>Plaintiffs,<br><br>v.<br><br>**FCJ REAL ESTATE DEVELOPMENT CO., INC., and SOUND SOLUTIONS WINDOWS & DOORS, LLC.,**<br><br>Defendants. | Case No. 09 C 7798<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Trustees of the Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, and Chicago Regional Council of Carpenters Apprentice & Trainee Program Fund's Motion to Enforce a Settlement Agreement with Defendants FCJ Real Estate Development Co., Inc. and Sound Solutions Windows & Doors, LLC. For the reasons stated herein, the Motion is denied.

### I. BACKGROUND

This case stems from a collection action brought under Section 502 of the Employee Retirement Income Security Act ("ERISA") and

Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"). *See* 29 U.S.C. § 1132; 29 U.S.C. § 185(a). Plaintiffs Trustees of the Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, and Chicago Regional Council of Carpenters Apprentice & Trainee Program Fund (hereinafter, collectively the "Plaintiffs"), obtained judgments against Defendant FCJ Real Estate Development Company (hereinafter, "FCJ") in three prior lawsuits. These judgments required FCJ to make contribution payments under ERISA and LMRA. Defendant Sound Solutions Window & Doors, LLC (hereinafter, "Sound Solutions") was not a party to these lawsuits.

On December 16, 2009, Plaintiffs filed the instant suit against Sound Solutions and FCJ. Plaintiffs' Complaint alleged that FCJ and Sound Solutions were jointly and severally liable for the judgments obtained in the three prior lawsuits because Sound Solutions and FCJ operated as a single and/or joint employer. In its Answer, Sound Solutions denied such allegations. *See* ECF No. 13 at 4-5.

After the parties completed discovery, Plaintiffs and Sound Solutions discussed settlement. On July 11, 2011, Plaintiffs and Sound Solutions met at the offices of Plaintiffs' counsel. Plaintiffs contend that FCJ was also present and represented by counsel at this meeting. Sound Solutions claims FCJ was not in attendance and states its counsel does not represent FCJ. Sound

Solutions also points out that FCJ has never filed an appearance or answered Plaintiffs' Complaint.

Allegedly, at the July 2011 meeting, the parties made significant progress toward reaching a resolution. Specifically, Plaintiffs and Sound Solutions orally agreed that Plaintiffs would accept $400,000 to resolve the case. Both parties also agreed Sound Solutions was not liable for $100,000 of the $400,000. (Apparently, this $100,000 was held in surety bonds FCJ purchased for the benefit of Plaintiffs. In light of this, Plaintiffs agreed not to hold Sound Solutions accountable for these funds as long as Sound Solutions agreed to provide Plaintiffs "reasonable cooperation" with Plaintiffs' efforts to collect the surety bonds. Pls.' Mot. to Enforce Settlement at 2.) With respect to the remaining $300,000, the parties agreed: (a) $177,000 would be paid from funds owed to Sound Solutions from the City of Chicago; and (b) $123,000 would be paid by FCJ and Sound Solutions in six (6) monthly payments of $20,500. Plaintiffs contend these monthly payments were to begin on September 30, 2011 and end on February 29, 2012. *See* Pls.'s Mot. at 2. Sound Solutions claims its payments were not due until after it received the funds from the City of Chicago. *See* Def.'s Resp. in Opp. to Pls.' Mot. at 3. At the conclusion of the July 11 meeting, Plaintiffs' counsel agreed to prepare a draft settlement agreement reflecting the aforementioned terms. The draft agreement was sent to Sound

Solutions on July 20, 2011.  *See* Def.'s Resp. in Opp. to Pls.' Mot., Ex. 1.  The draft agreement included language indicating that the $20,500 monthly payments were to begin on September 30, 2011 and end on February 29, 2012.  *Id.* at 4.

After reviewing the draft agreement, Sound Solutions made a number of changes and emailed Plaintiffs a redlined version on August 16, 2011.  The redlined version of the agreement is labeled "DRAFT" and is not signed.  Significantly, Sound Solutions crossed out the effective date at the top of agreement, and intentionally left a blank space to be filled in at a later time.  The $20,500 monthly payment dates were not changed.

Plaintiffs' counsel reviewed these changes and on August 17, 2011, sent an email to Sound Solutions' counsel which stated, "I agree with all of your proposed language.  Let me know as soon as possible about the initial payment date."  *See* Pls.' Mot. to Enforce Settlement; Ex. C at 1.  Sound Solutions submits that it could not commit to an initial payment date until the City of Chicago turned over the $177,000.  Allegedly, Sound Solutions informed Plaintiffs' counsel it would not begin making monthly payments until it had assurance it would not be forced to pay the $177,000 if the City continued to withhold the funds.

After receiving Plaintiffs' email, the parties engaged in joint efforts to convince the City to release the $177,000. Specifically, at the request of Sound Solutions, on February 21,

2012, Plaintiffs sent the City a letter asking the City to turn over the funds. Again, the City refused to do so.

On April 11, 2012, (nearly seven months after the initial monthly payment was supposed to be paid pursuant to the draft agreement), Plaintiffs emailed Sound Solutions to inquire whether Sound Solutions could begin to make the $20,500 monthly payments notwithstanding the City's lack of cooperation. *See* Def.'s Resp. in Opp. to Pls.' Mot.; Ex. 3 at 2. While Sound Solutions agreed to discuss this possibility, it reiterated its concern about making any payments until the City released the funds. *Id.*

On October 16, 2012, Plaintiffs filed a Motion seeking to enforce a turnover action against the City. *See* ECF No. 52. However, at a status hearing on November 27, 2012, Plaintiffs withdrew this Motion and informed the Court they would be seeking payment from Sound Solutions. *See* ECF No. 58.

Accordingly, Plaintiffs filed the instant Motion to Enforce Settlement on November 29, 2012 (nine months after Sound Solutions was supposed to make its final payment under the draft agreement). In their Motion, Plaintiffs contend that the redlined version of the agreement Sound Solutions sent to Plaintiffs on August 16, 2011 is valid and enforceable. Plaintiffs claim Sound Solutions has defaulted on this agreement since it has failed to make any payments. Thus, because of the default, Plaintiffs seek a judgment against Sound Solutions for $523,311.39.

Not surprisingly, Sound Solutions disagrees with Plaintiffs' contentions. Sound Solutions argues the parties never reached a final settlement agreement and the August 16, 2011 agreement is unenforceable because material terms remain in dispute. Alternatively, Sound Solutions contends Plaintiffs are estopped from enforcing the agreement.

## II. **LEGAL STANDARD**

"A district court has the inherent or equitable power to enforce a settlement agreement in a case before it." *Hyde Park Union Church v. Curry*, 942 F.Supp. 360, 363 (N.D. Ill. 1996). A settlement agreement is a contract and its enforcement is governed by principles of contract law. *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008). Under Illinois law, a settlement agreement is enforceable where there is an offer, an acceptance, and a "meeting of the minds" on all material terms. *TRT Transp., Inc. v. Aksoy*, No. 12-2863, 2013 WL 646392, at *2 (7th Cir. Feb. 22, 2013). Material terms are sufficiently definite where they enable the court to ascertain what the parties have agreed to do. *Seko Worldwide, LLC v. Four Soft Ltd.*, 503 F.Supp.2d 1059, 1061 (N.D. Ill. 2007). Thus, a contract may be enforceable even though some terms are left to be agreed upon, but if material terms are so uncertain that there is no basis for determining whether the agreement has been kept or broken, there is no contract. *Citadel*

*Group Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 589 (7th Cir. 2012).

### III. ANALYSIS

As a preliminary matter, the parties do not dispute that Illinois law governs. Indeed, there is a clause in the agreement Plaintiff seeks to enforce that indicates Illinois law controls all issues regarding the agreement. *See* Pls.' Mot.; Ex. 2 at 7.

Plaintiffs admit that the parties never agreed on an initial payment date. They also acknowledge that Sound Solutions "intended to finance part of the settlement payments with the proceeds being held by the City of Chicago." Pls.' Reply in Supp. of Mot. at 1. Despite these facts, Plaintiffs claim the August 16, 2011 redlined agreement is an enforceable settlement agreement. The Court disagrees.

To begin, in Illinois the party seeking to enforce a settlement agreement bears the burden of establishing the existence of a valid agreement. *See IMI Norgren, Inc. v. D & D Tooling MFG., Inc.*, 306 F.Supp.2d 796, 802 (N.D. Ill. 2005). The moving party can satisfy this burden "by showing that the actions of the parties indicate an agreement." *Whittington v. Trustees of Purdue Univ.*, No. 2:09-CV-9, 2011 WL 1336514 at *2 (N.D. Ind. Apr. 5, 2011). In order for a settlement agreement to be enforceable "its terms and provisions must enable the court to determine what the parties have agreed to." *Id.*

In this case, it is undeniable that Sound Solutions and Plaintiffs agreed on a number of essential terms for settlement, including the total amount of money Plaintiffs would accept in full satisfaction of their claims. Generally, facts like this are indicative that an enforceable settlement agreement exists. *See Nance v. Rothwell*, No. 09-C-7733, 2012 WL 1230722 (N.D. Ill. Jan. 17, 2012).

However, there are a number of loose ends which were never tied up, as well as other factors which suggest that a final agreement was never reached. First, the agreement Plaintiffs seek to enforce is labeled "DRAFT." *See* Pls.' Mot. to Enforce Settlement Agreement, Ex. 2 at 1. Next, at the end of the agreement, Sound Solutions left room for the signatures of Plaintiffs', FCJ's and Sound Solutions' representatives. Yet, the agreement does not bear a single signature. *Id*. at 8. To top it off, the agreement does not have an effective date. Such a date should appear in the very first line of the agreement. This line reads, "THIS AGREEMENT entered into this ~~11~~___th day of ~~July~~ August 2011 by and among . . . " *See* Pls.' Mot. to Enforce Settle., Ex. 2 at 1.

The Court acknowledges these factors are not necessarily dispositive on the issue of whether an enforceable settlement agreement exists. However, they are relevant in determining the parties' intent and whether Plaintiffs have satisfied their burden

in establishing the existence of an enforceable agreement. *See Solaia Tech. LLC v. ArvinMeritor, Inc.*, No. 02 C 4704, 2006 WL 695699 (N.D. Ill. Mar. 16, 2006).

It is also worth mentioning that FCJ is a party both to this lawsuit and to the settlement agreement Plaintiffs seek to enforce. That being said, it is not clear FCJ is even aware the agreement exists. While Plaintiffs argue that all Defendants, including FCJ, were present and represented at the July 11, 2011 meeting, Sound Solutions states otherwise. Sound Solutions claims FCJ was not in attendance at the meeting, and has not filed an appearance in this case. A review of the docket confirms this and confirms that FCJ has not even answered Plaintiffs' Complaint, let alone the instant Motion to Enforce Settlement. The fact that a party to the agreement which Plaintiffs seek to enforce may not even be aware of the agreement makes it difficult to find an enforceable settlement agreement exists. *See Khan v. Hosp. Laundry Services, Inc.*, 01 C 0681, 2002 WL 1610952 at *4 (N.D. Ill. July 18, 2002) (declining to enforce a settlement agreement because while the plaintiffs' counsel was present at the settlement conference, the client was not, and the client denied that his attorney had authority to enter into the agreement in his absence).

In light of these facts, the Court denies Plaintiffs' Motion to Enforce the Agreement. The Court declines to analyze whether establishing an initial payment date is a material term under the

alleged agreement, and whether Plaintiffs are estopped from enforcing the agreement because of their actions subsequent to the dates mentioned in the agreement regarding the monthly payments. The Court notes these facts also support denial. It would be difficult for the Court to determine "what [exactly] the parties have agreed to" and whether Sound Solutions has breached the agreement if an initial payment date was never set and if Plaintiffs waited over a year before taking any action that suggested Sound Solutions was in default. *Whittington*, 2011 WL 1336514 at \*2.

## IV. CONCLUSION

For the reasons stated herein, the Court denies Plaintiffs' Motion to Enforce the Settlement Agreement.

**IT IS SO ORDERED.**

　

　

/s/ Harry D. Leinenweber
_____
Harry D. Leinenweber, Judge
United States District Court

Date: 3/26/2013